UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| NATHAN WALLS, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 4:04CV1203 RWS |
| ST. LOUIS COUNTY JUSTICE SERVICES, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before me on Defendants' motion for summary judgment. Nathan Walls has filed suit against Defendants under 42 U.S.C. § 1983 alleging that Defendants used excessive force in restraining him. Defendants argue that summary judgment should be granted in their favor because Walls admits that he refused to follow the directions of the corrections officers and that he fought against them. For the reasons stated below, the motion will be granted in part and denied in part.

## BACKGROUND

At the time the events giving rise to this case occurred, Walls was a pretrial detainee at the St. Louis County Department of Justice Services ("Justice Services").[1] Defendants William Bradford, Myron Williams and Harry Bracy were correctional officers for Justice Services.

On January 27, 2003, Bradford responded to Housing Unit 5D, in which Walls was located, following a call for assistance from officer Sholanda Bradley. Bradley had ordered a lock down of Housing Unit 5D after Walls allegedly threatened to "rush" her. A "lock down" requires

---

[1] I dismissed Walls' claims against Justice Services earlier in this case because they were frivolous.

that all housing unit residents be secured in their individual rooms. All inmates, except for Walls, complied with the lock down order. Walls refused to follow Bradley's commands and demanded to speak to Bradford. Bradley summoned Bradford.

When Bradford arrived at Housing Unit 5D, he ordered Walls to "turn around and cuff up" so that Walls could be removed to his room. Walls admits that he refused to comply with Bradford's order. Bradford then radioed for assistance.

What happened next is disputed by the parties. Walls claims that he was holding his legal papers in his hand and that he turned to set them down in order to comply with the order to cuff up. Walls states that Bradford grabbed him by the collar and pulled him down. Bradford claims that after Walls refused his order to cuff up, Walls quickly approached Bradford with his arms extended. Bradford claims that Walls grabbed him and that he pushed Walls away. Bradford claims that Walls then struck him several times.

Walls admits that he refused to follow Bradford's orders, that he threatened Bradford, and that he hit and kicked Bradford, and that he never stopped resisting Bradford's attempts to subdue him.

Williams was the first correctional officer to respond to Bradford's request for assistance. Williams testified that he saw Walls trying to hit Bradford. Bradford and Williams again issued an order for Walls to cuff up. Walls continued to refuse, and Bradford and Williams attempted to control Walls by forcing him to the floor. They forced Walls to the ground, and he continued to resist.

Other correctional officers, including Defendant Bracy, arrived in Housing Unit 5D and offered further assistance. Walls stated that the correctional officers' attempts to restrain him

"made the resistance drive to get loose even stronger." Further, after a correctional officer successfully cuffed one of Walls' wrists, Walls stated that "[his] resistance started up again." Bracy placed his hands on Walls' shoulders and a knee onto Walls' back while another officer cuffed Walls' wrists and shackled his ankles. Walls claims that Bradford kicked him in the head after he was cuffed and shackled. Bradford denies Walls' allegation and claims that his use of force ceased when Walls was restrained by other correctional officers.

Walls was immediately seen by the prison medical staff, who recommended that Walls be transported to a hospital because of the injuries he sustained during the struggle. Walls was taken to Forest Park Hospital, where it was determined that he had a fractured jaw.[2] The medical staff at Forest Park Hospital recommended surgery for the injured jaw. Walls refused treatment, stating that he wanted to see his surgeon at Barnes Jewish Hospital. Walls then spent the night in the prison infirmary. He refused the pain medication offered to him by prison medical staff. Walls received surgery on his jaw on March 12, 2003, the date set by his surgeon at Barnes Jewish Hospital.

**STANDARD**

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to the plaintiff. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Defendant has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986);

---

[2]Walls had suffered multiple fractures to his jaw prior to his arrival at Justice Services. Those fractures required surgery, in which screws and plates were used to repair Walls' jaw.

Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). Once defendant has met this burden, plaintiff cannot rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. Under these standards, I review the facts of this case.

### ANALYSIS

Walls claims that Defendants Bradford, Williams, and Bracy used excessive force in restraining him in violation of his Eighth Amendment rights. The Eighth Amendment protects inmates from unnecessary and wanton infliction of pain by correctional officers. Whitley v. Albers, 475 U.S. 312, 319 (1986); Johnson v.Blaukat, 453 F.3d 1108, 1112 (8th Cir. 2006); Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002). Correctional officers are permitted to use force reasonably in a good-faith effort to maintain or restore discipline, as long as they do not use force maliciously or sadistically to cause harm. Hudson v. McMillan, 503 U.S. 1, 7 (1992); Whitley, 475 U.S. at 320-21; Johnson, 453 F.3d at 1112. Factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the officials, and any efforts made to temper the severity of a forceful response are relevant to the reasonableness determination. Hudson, 503 U.S. at 7; Whitley, 475 U.S. at 321. The extent of the injury inflicted is also relevant, but not dispositive, to the determination. Hudson, 503 U.S. at 7.

Prison officials are accorded wide-ranging deference in preserving internal order and discipline. Whitley, 475 U.S. at 321-22. The deference granted to prison officials recognizes that

they must often make decisions "in haste, under pressure, and frequently without the luxury of a second chance." Id. at 320. It extends to prison security measures taken in response to actual confrontations with riotous inmates. Id. at 322. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. Id.

Government officials performing discretionary functions are also entitled to qualified immunity from liability for claims brought under 42 U.S.C. § 1983. Harlow v. Fitzgerald, 457 U.S. 800 (1982). "Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Yowell v. Combs, 89 F.3d 542, 544 (8th Cir. 1986) (citing Harlow, 457 U.S. at 818). The applicability of qualified immunity involves a three-step inquiry: whether the plaintiff has alleged the violation of a constitutional right; whether that constitutional right was clearly established at the time of the alleged violation; and whether, given the facts most favorable to the plaintiff, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated that right. Id.

Here, Walls alleges a violation of his Eighth Amendment right against excessive force by prison officials. The limitations on the use of force by prison officials were clearly established by Hudson and Whitley. As a result, whether summary judgment should issue turns on whether the evidence, viewed in the light most favorable to Walls, supports a reliable inference of malice and sadism by Defendants in their use of force in violation of the Eighth Amendment.

There is a factual dispute regarding Walls' claims against Bradford making summary judgment improper. Although Bradford could justifiably use force reasonably in a good-faith

effort to maintain or restore discipline, not every instance of inmate resistance justifies the use of force. Hudson, 503 U.S. at 7; Treats, 308 F.3d at 872. Whether a situation justifies the use of force is a fact specific issue that turn on the circumstances of the individual case. Id.

The United States Court of Appeals for the Eighth Circuit recently overturned a district court's grant of summary judgment in a case similar to this one. Johnson, 453 F.3d at 1114. In Johnson, four female inmates were placed into lock down after they bullied other inmates. When the women initially refused to comply with the lock down order, additional correctional officers were summoned to enforce the order. When a correctional officer entered the women's cell to calm a disruptive inmate, inmate Johnson stepped in front of the officer. Johnson was tackled to the floor, choked, beaten and maced on her eyes and face. The correctional officers claimed that Johnson posed a risk to safety and security because she did not initially comply with the lock down order, intentionally interfered with the officers' attempt to calm a disruptive inmate, and failed to produce her hands for cuffing. The Eighth Circuit found material questions of fact, "including whether the acts were defensive in nature or motivated by anger, whether they were necessary to maintain order or reactions by frustrated officers, and whether the force used was commensurate with the situation." Johnson, 453 F.3d at 1113.

Here, the parties agree that Walls vigorously resisted the attempts by correctional officers to restrain him after he did not comply with the lock down order. However, Walls and Bradford dispute the initial need for force. Walls claims that he turned to place his legal work on a nearby table to comply with Bradford's repeated commands to "turn around and cuff up." Bradford alleges that Walls attacked him. Based on this factual dispute, whether the initial application of force was necessary is a material question of fact to be determined by the trier of fact. Further,

Walls claims that Bradford threatened him during their struggle, telling Walls to "just wait until my friends get here." Finally, Walls claims that Bradford kicked him in the head *after* Walls had been handcuffed and shackled by other correctional officers. Viewing the facts in the light most favorable to Walls, a rational jury could find that Bradford's use of force against Walls was excessive. Because there are genuine issues of material fact as to whether Bradford's use of force was excessive, I find that Bradford is not entitled to summary judgment.

For the same reasons, Bradford is not entitled to summary judgment based on qualified immunity. Walls' right to be free from the malicious use of force was clearly established at the time of the incident, and a reasonable corrections officer would have known of that right.

Defendants are entitled to summary judgment on Walls' claims against Williams and Bracy because Walls has not introduced any evidence showing that Williams and Bracy did not act in good faith when they assisted Bradford. Williams and Bracy each responded to Bradford's radio call for the assistance of additional correctional officers. When Williams arrived at Housing Unit 5D, he witnessed Walls swing and punch at Bradford. When Bracy arrived at Housing Unit 5D, he witnessed Bradford and Williams attempting to subdue Walls, who continued in his resistance. The evidence shows that the force employed by Williams and Bracy was commensurate with Walls' escalating resistance, to which Walls freely admits. Williams and Bracy stopped their use of force once other correctional officers were successful in cuffing Walls' wrists and shackling his ankles. Walls makes no claim to the contrary. There are no genuine issues of material fact as to the force used by Williams and Bracy. As a result, Defendants are entitled to summary judgment on Walls' claims against Williams and Bracy.

For the same reasons, Williams and Bracy are protected from liability by qualified

immunity.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [#57] is **GRANTED in part and DENIED in part**. Summary judgment shall be entered in favor of Defendants and against Plaintiff on Plaintiff's claims against Defendants Williams and Bracy. Summary judgment shall be denied as to Plaintiffs' claims against Defendant Bradford.

Dated this 8th day of September, 2006.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE