UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| NATHAN WALLS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:04CV01203 RWS |
| WILLIAM EDWARD BRADFORD, et al., | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before me on Defendant William Edward Bradford's partial Motion for Summary Judgment [#100].

Plaintiff Nathan Walls' Second Amended Complaint alleges 42 U.S.C. § 1983 violations against employees of the St. Louis County Justice Center. Count I alleges excessive use of force against Defendant Bradford as a result of Bradford's alleged beating of Walls while Walls was incarcerated at the St. Louis County Justice Center. Bradford, a corrections officer at the St. Louis County Justice Center, is sued in his individual and official capacities. Bradford moves for partial summary judgment on the basis that Bradford, in his official capacity, is not liable to Walls.

## **Background**

At the time of the beating alleged in Walls' complaint, Plaintiff Nathan Walls was a pretrial detainee at the St. Louis County Justice Center. Defendant William Bradford was an employee of St. Louis County, Missouri with the Department of Justice Services at that time.

The St. Louis County Department of Justice Services ("DJS") is established by the St. Louis County Charter, Article IV, Section 4.400. Roy Mueller is the Director of the Department

of Justice Services. Pursuant to Section 4.410 of the St. Louis County Charter, Roy Mueller is in charge of the St. Louis County Justice Center ("Justice Center"). As Director of DJC, Mueller's duties include making and formulating policies and procedures of the DJS. The policies established by Mueller govern the operation and conduct of DJS, for which Mueller is the final policy maker. Mueller cannot delegate his policy-making authority for DJC. As Director, Mueller is responsible for the hiring, firing and discipline of approximately 350 employees who work for DJS.

Applicants for DJS corrections officer positions must be at least 21 years of age and have a valid driver's license. Applicants must also have either: (a) a high school diploma and two years of work experience; (b) attained 30 credit hours in behavioral sciences, criminology, corrections, or a related field; or (c) an equivalent combination of training and experience based on (a) and (b). Before hiring applicants for the position of corrections officer, DJS checks the applicant's employment history and education history. DJS also does a criminal background check on correction officer applicants and may choose not to hire some applicants based on their criminal backgrounds.

DJS requires corrections officers to complete 200 hours of training prior to working. This training includes 75 hours of classroom training and 125 hours of on-the-job training. Training lasts five weeks, of which the last two weeks are spent with a field training instructor working in the housing units at the Justice Center. The training includes training on the DJS use of force policy. Corrections officers must also pass a written test prior to beginning work. Corrections officers are evaluated by field training instructors during the training period. Corrections officers also receive continuing education as part of their employment at DJS and are expected to complete 40 hours of continuing education each year. Depending on the year, this

continuing education may include training on the DJS use of force policy. DJS is accredited by the American Correctional Association.

Defendant Bradford satisfied the DJS's employment standards for a corrections officer. Defendant Bradford has also completed 261 hours of continuing education since 2001.

DJS Policy No. 823 is the institution's policy regarding the use of force. Policy No. 823 allows DJS corrections officers to use only the least amount of force necessary to overcome resistance by an inmate. Policy No. 823 requires that DJS employees use force pursuant to a use of force continuum. Under the Policy, DJS employees can use minimal physical force for their protection or when other options have failed or are not immediately available. When there is a use of force, Policy No. 823 requires that the corrections officers complete an incident report that explains the use of force and why it was necessary. Incidents of use of force are reviewed by DJS supervisors.

DJS Policy No. 106 also governs the conduct of DJS employees. Policy No. 106 prohibits any DJS employee from striking or laying hands on an inmate, unless done in self-defense, to prevent injury to another person or to quell a disturbance. Under Policy No. 106, only the amount of force necessary to bring a situation under control may be used. Any violations of DJS policies, including Policy Nos. 283 and 106, subjects any DJS employee, including correctional officers, to discipline.

Inmates housed at the Justice Center may file grievances concerning their treatment, incidents, medical care and rules or regulations. The procedure for inmate grievances is contained in DJS Policy No. 1802. Inmate grievances are handled by a caseworker or investigated by a unit manager. Inmates may appeal the DJS written response to their grievance.

**Standard of Review**

In considering whether to grant summary judgment, a district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ...." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)).

The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

**Analysis**

Defendant Bradford argues that he is not liable to Walls in his official capacity.

A suit against a governmental actor in his official capacity is treated as a suit against the governmental entity. Brockinton v. City of Sherwood, 503 F.3d 667, 674 (8th Cir. 2007). In order to establish municipal liability under 42 U.S.C. § 1983, Walls must demonstrate that his

4

constitutional injury was caused by a policy or custom of DJS. Lund v. Hennepin County, 427 F.3d 1123, 1125 (8th Cir. 2005). Specifically, Walls must show that his constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct so pervasive among non-policy-making employees of the municipality "as to constitute a 'custom or usage' with the force of law." Ware v. Jackson County, 150 F.3d 873, 880 (8th Cir. 1998) (quoting Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 691 (1978)). A custom or usage is shown by (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to, or tacit authorization of, such conduct by the governmental entity's policymaking officials after notice to the officials of the misconduct; and (3) proof that the custom was the moving force behind the constitutional violation. Id.

### *Use of Force Policy*

Walls contends that DJS is liable for Walls' alleged injury because DJS's use of force policy directed and authorized a deprivation of Walls' constitutional rights. Walls submits no evidence to support this position. Rather, Walls argues that because Bradford states that he used only minimal force on Walls and because no violation of DJS policy was found, DJS policy "authorized the amount of force used by Defendant Bradford against Nathan Walls."

Bradford's partial Motion for Summary judgment does not argue that his use of force on Walls was constitutional because there are disputed facts regarding the incident that preclude summary judgment on Walls' individual capacity claims. In his Motion, Bradford only moves for summary judgment on the official capacity claim, which alleges liability against DJS.

To make a case of municipal liability against DJS, Walls must show that his alleged constitutional injury was caused by a policy or custom of DJS, the implementation of which

5

amounted to deliberate indifference to his constitutional rights. Ware, 150 F.3d at 880. "Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). "[T]he authority to make municipal policy is necessarily the authority to make final policy." St. Louis City v. Prapotnik, 485 U.S. 112, 127 (1988). A "policy" is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters. See Ware, 150 F.3d at 880. A plaintiff can establish municipal liability by proving injury from the execution of an "official policy" or from actions that are so pervasive among non-policy-making employees that they become "custom or usage" with the force of law. McGautha v. Jackson County, 36 F.3d 53, 56-57 (8th Cir. 1994).

The question of who is the final policy-maker for DJS is a question of law. See Pembaur, 475 U.S. at 483; see also Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989). The written, official policy of a municipality is to be given great weight in determining what are the municipality's policies. Praprotnik, 485 U.S. at 127.

The use of force policy for DJS is found in Policy No. 823. This policy allows use of the least amount of force that is necessary to overcome an inmate's resistance. The Director of DJS establishes DJS's use of force policy. The Director's authority to make policy on use of force cannot be delegated. Therefore, I find that the Director, Roy Mueller, is the final policy-maker with respect to DJS's use of force policy. Pembaur, 475 U.S. at 481.

Corrections officers who violate Policy No. 823, or any other DJS policy, are subject to discipline. In addition, DJS Policy No. 106 prohibits DJS employees from striking or laying hands on an inmate unless done in self-defense, to prevent injury to another person or to quell a disturbance. Corrections officers who violate Policy No. 106 may be disciplined.

Because Policy No. 823 is the County's final policy on use of force and the DJS Director's authority to make final policy is not delegated, I find that Walls cannot show that Defendant Bradford's actions were the result of DJS policy.

*Inadequate Training and Supervision*

A city may be liable for deficient policies regarding hiring and training police officers when: (1) the city's hiring and training procedures are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, so that the "failure to train reflects a conscious choice by a municipality;" and (3) an alleged deficiency in the city's hiring or training procedures actually caused the plaintiff's injury. City of Canton v. Harris, 489 U.S. 378, 389 (1989); see Larson by Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996) (en banc). It is necessary to show "that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, 489 U.S. at 390. In other words, the Walls must demonstrate that DJS "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Thelma D. v. Board of Education, 934 F.2d 929, 934 (8th Cir. 1991).

DJS requires corrections officers to complete 200 hours of training. This training includes 75 hours of classroom instruction and 125 hours of on-the-job training. The instruction, which takes five weeks to complete, includes two weeks spent with a field training instructor while working in the housing units at the Justice Center. This training also includes instruction on the use of force policy. Corrections officers must pass a written test before they can begin work. Additionally, corrections officers receive continuing education as part of their

employment at DJS and are expected to complete 40 hours of instruction each year. Bradford has met the requirements for employment as a corrections officer at DJS. He has also completed 261 hours of continuing education since 2001. I therefore find that the record contains no evidence that DJS's training on use of force was inadequate and that any alleged inadequacy caused Wall's alleged injury. See Tucker v. Evans, 276 F.3d 999, 1003 (8th Cir. 2002) (citing 8th Circuit cases that have held attendance at a training academy and on-the-job training is sufficient for proper training).

Failure to train or supervise can only the basis for § 1983 liability in "limited circumstances." City of Canton, 489 U.S. at 387. Such circumstances occur where (1) the municipality inadequately trains or supervises its employees; (2) the failure to train is a municipal policy; and (3) that policy causes the employee to violate a person's constitutional rights. Id. Walls has not identified a deficiency in DJS's training. However, even if Walls had identified a deficiency in DJS's training, "the identified deficiency in a [municipality]'s training program must be closely related to the ultimate injury such that the deficiency in training actually caused the . . . offending conduct." Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996) (internal citations and quotations omitted). Moreover, there is nothing in the record to show that DJS had notice that its training procedures were inadequate and likely to result in a violation of constitutional rights. City of Canton, 489 U.S. at 387.

I find that Walls cannot show that DJS inadequately trained or supervised Bradford.

*Inadequate Hiring*

Walls cannot show that DJS's hiring policies are deficient, or that any deficiency caused Bradford's alleged unlawful conduct. DJS corrections officers must be 21 years of age and have a valid driver's license. To apply for a position as a corrections officer, an applicant must have:

(2) a high school diploma and two years of work experience; (b) attained 30 credit hours in behavioral sciences, criminology, corrections or a related field; or (c) an equivalent combination of training and experience based on an equal combination of training, high school and work experience. DJS checks the educational and employment histories of applicants. DJS also performs criminal background checks on applicants and some applicant are not hired due to their criminal backgrounds.

I find nothing in the record to support a finding that DJS's hiring policy is inadequate and that DJS acted with deliberate indifference to Wall's constitutional rights in hiring Bradford. See Williams-El v. Johnson, 872 F.2d 224, 230 (8th Cir. 1989) (plaintiff failed to prove that city's jail hiring policy was constitutionally deficient where a jail guard had no high school diploma and had not attended a training course).

Therefore, I find that Walls cannot show that DJS inadequately hired Bradford.

*Failure to Discipline/Pattern of Misconduct*

To establish liability against DJS, Walls must show that DJS "had a custom or policy of failing to act upon prior similar complaints of unconstitutional conduct, which caused the constitutional injury at issue." Rogers v. City of Little Rock, 152 F.3d 790, 798-99 (8th Cir. 1998) (internal citations and quotations omitted). A custom can only exist where there is a "prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have th effect and force of the law." Andrews, 98 F.3d at 1075 (quoting Monell, 436 U.S. at 694). "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of [employee] misconduct and deliberately failed to take remedial action." Parrish v. Luckie, 963 F.2d 201, 204 (8th Cir. 1992); see also Harris v. Pagedale, 821 F.2d 499, 504 (8th Cir. 1987), cert. denied, 484 U.S. 986 (1987)

(municipal custom proven through showing of evidence regarding defendant police officer's prior misconduct and the city's failure to investigate or punish that conduct).

Inmates at the Justice Center may file grievances regarding their treatment or in regard to certain incidents. These grievances are handled by a caseworker, or investigated by a unit manager. Inmates may appeal the written response to their grievances. Use of force incidents must be recorded by corrections officers in an incident report. The incident report must explain why the use of force was necessary and what type of force was used. Incident reports detailing uses of force are reviewed by DJS supervisors.

Here, Walls has not shown evidence of prior complaints against Bradford sufficient to demonstrate that DJS ignored misconduct by Bradford or failed to investigate prior allegations of misconduct against Bradford which were sufficiently similar to the actions alleged by Walls to have caused Walls' constitutional injury.

I find that Walls cannot show that DJS failed to discipline Bradford or that there was a pattern of misconduct by Bradford.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant William Edward Bradford's partial Motion for Summary Judgment [#100] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 1st day of February, 2008.